UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE HONDA OF AMERICA** | Case No. 2:08-cv-1059 |
| **MFG., INC.** | Judge Gregory L. Frost |
| **ERISA FEES LITIGATION** | Magistrate Judge Terence P. Kemp |

## OPINION AND ORDER

This matter is before the Court on Defendants Honda of America MFG., Inc. ("Honda"), Michael Ryan, Tim Garrett, Ray Perez and Mike Baird's (together the "Honda Defendants") Motion to Dismiss Complaint and to Strike Jury Demand ("Motion to Dismiss" and "Motion to Strike") (Doc. #60), Plaintiffs' Memorandum of Law in Opposition to the Honda Defendants' Motion to Dismiss and to Strike (Doc. # 71), and the Reply of the Honda Defendants in Support of [their] Motion to Dismiss and to Strike (Doc. # 75).  Plaintiffs and the Honda Defendants also request oral argument on the Honda Defendant's Motion to Dismiss.  For the reasons that follow, the Court **GRANTS** the Honda Defendants' Motion to Dismiss, **DENIES AS MOOT** the Honda Defendants' Motion to Strike, and **DENIES** the parties' request for oral argument.

### I.  Background

This action began with virtually identical class action complaints filed in this District by Joseph Shanks, Case Number 2:08-cv-1059, and by Phillip M. Salyer and Tamara L. Stanford as co-plaintiffs in Case Number 2:08-cv-1060 (together "Plaintiffs").  On January 9, 2009, Plaintiffs submitted an Unopposed Motion for Consolidation and for Entry of Initial Case Management Order.  (Doc. # 17).  On January 13, 2009 this Court granted that motion.  (Doc. # 22.)  On March 20, 2009, Plaintiffs filed a consolidated amended class action complaint.  (Doc. # 53.)  In the amended complaint, Plaintiffs asserted two claims for relief, both brought under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Plaintiffs were participants in and beneficiaries of the Honda 401(k) Savings Plan (the "Plan") that Honda established in 1985 to benefit its employees. The Plan is subject to ERISA and the three named plaintiffs are participants in it. The Plan is a "defined contribution plan," as defined in ERISA § 3(34), 29 U.S.C. § 1002(34), and contains or is part of an "eligible individual account plan" under ERISA § 407(d)(3)(A), 29 U.S.C. §1107(d)(3)(A).

Plaintiffs are suing on behalf of a putative class of fellow participants and beneficiaries of the Plan who seek to recover losses they claim resulted from the Honda Defendants' and Merrill Lynch Bank & Trust Co., FSB's ("Merrill Lynch's") breach of their fiduciary duties and these defendants' engagement in ERISA-prohibited transactions between November 7, 2002 and March 28, 2008 (the "class period"). During the class period Merrill Lynch served as directed trustee and record keeper for the Plan and Honda was the Plan sponsor and administrator. Merrill Lynch has moved separately for dismissal of the claims brought against it. That motion is not the subject of this Opinion and Order.

The information relied upon in this Opinion and Order was taken from the amended complaint or the Declaration of Honda's Assistant Manager of its Benefits Department Julie Diley, and the exhibits attached thereto, which included the Plan and its amendment, the Plan Annual Return/Report, the Summary Plan Description for relevant years, and Plan merger documents.[1]

---

[1]The Court will consider these documents on this motion to dismiss and will not convert the Honda Defendants' motion to one for summary judgment because the documents are referred to in the pleadings and are integral to the claims. *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). Here, Plaintiffs do not dispute that these documents are

## II.  Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A few months ago, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the United States Supreme Court clarified the plausibility standard articulated in *Twombly*:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

*Id.,* at 1949-50;

## III.  Analysis

In their motion to dismiss, the Honda Defendants ask this Court to dismiss the amended complaint in its entirety for failure to state a claim upon which relief can be granted and further request that the Court strike Plaintiffs' request for a jury trial.  Additionally, all  parties request

---

appropriate for review at this stage of these proceedings .

oral argument on the Honda Defendants' Motion to Dismiss.

## A. Request to Dismiss for Failure to State a Claim

Plaintiffs allege generally that the Honda Defendants' misconduct impaired the value of the Plan assets held in their individual accounts.

> Even before the stock market began its precipitous fall in early October 2008, litigation over alleged mismanagement of defined contribution pension plans was becoming common. This type of litigation received a boost when, in *LaRue v. DeWolff, Boberg & Associates, Inc.*, [552 U.S. 248], 128 S.Ct. 1020 (2008), the Supreme Court held that "a participant in a defined contribution pension plan [may] sue a fiduciary whose alleged misconduct impaired the value of plan assets in the participant's individual account." 128 S.Ct. at 1022. Section 502(a)(2) of [ERISA] provides the basis for such an action.

*Hecker v. Deere & Co.*, 556 F.3d 575, 577 (7th Cir. 2009). Plaintiffs allege that the Honda Defendants' misconduct was a breach of the Honda Defendants' ERISA-imposed fiduciary duties (Count I) and that this misconduct involved transactions prohibited by ERISA (Count II).

### 1. Count I - Breach of Fiduciary Duty in Violation of ERISA § 502(a)(2)

ERISA requires that a fiduciary discharge its duties with the care, skill, prudence, and diligence of a prudent man. 29 U.S.C. § 1104(a)(1)(B). In the amended complaint, Count I asserts that the Honda Defendants breached their fiduciary duties under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), by allowing Merrill Lynch to charge fees that were "excessive," "unreasonable," and "exorbitant" and that were "not incurred for the benefit of Plan participants and beneficiaries" Am. Compl. ¶¶ 3, 34-41, 68. Specifically, Plaintiffs allege that the Honda Defendants breached their fiduciary duties by (a) making the imprudent choice to include nine Merrill Lynch funds or funds of a company in which Merrill Lynch had an interest out of the twenty-four funds offered by the Plan in early 2008 (totaling approximately 52% of the Plan assets), and by (b) allowing the Plan to offer retail share mutual funds for investment because the

Plan should have used its size and market leverage to negotiate lower than retail share charges for Plan members.

The Honda Defendants request dismissal of this claim for relief because, they contend, these allegations do not state plausible claims.  The Honda Defendants argue that the United States Court of Appeals for the Seventh Circuit addressed these exact issues this year in *Hecker v. Deere & Co.*, that the *Hecker* court's reasoning is sound and persuasive, that there is no authority in the Sixth Circuit on these issues, and that this Court should follow *Hecker's* analysis.  556 F.3d 575.  The Honda Defendants' arguments are well taken.

### a. *Merrill Lynch mutual funds*

In the instant action, Plaintiffs allege that the Honda Defendants, as the Plan sponsors and administrators, imprudently limited the Plan investment options to mutual funds of Merrill Lynch, the Plan's directed trustee and record keeper.  Likewise, in *Hecker*, the plaintiffs alleged that Deere & Co., as the 401k plan sponsor and administrator, imprudently limited the 401k plan investment options to mutual funds of Fidelity, the plan's directed trustee and record keeper. The *Hecker* court explained:

> As for the allegation that Deere improperly limited the investment options to
> Fidelity mutual funds, we find no statute or regulation prohibiting a fiduciary
> from selecting funds from one management company.  A fiduciary must behave
> like a prudent investor under similar circumstances; many prudent investors limit
> themselves to funds offered by one company and diversify within the available
> investment options.  As we have noted several times already, the Plans here
> directly offered 26 investment options, including 23 retail mutual funds, and
> offered through BrokerageLink 2,500 non-Fidelity funds.  We see nothing in the
> statute that requires plan fiduciaries to include any particular mix of investment
> vehicles in their plan.  That is an issue, it seems to us, that bears more
> resemblance to the basic structuring of a Plan than to its day-to-day management.
> *Compare Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999);
> *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).  We therefore question
> whether Deere's decision to restrict the direct investment choices in its Plans to

5

> Fidelity Research funds is even a decision within Deere's fiduciary responsibilities. On the assumption that it is, however, we nonetheless conclude that taking the allegations in the Complaint in the light most favorable to plaintiffs, no breach of a fiduciary duty on Deere's part has been described.

*Hecker*, 556 F.3d at 586-87.

Here, this Court too questions whether the Honda Defendants' decision to restrict the direct investment choices in the Plan to a portion of Merrill Lynch funds is a decision within these defendants' fiduciary responsibilities. Assuming that it is, however, the Court concludes that accepting as true Plaintiffs' factual allegations and drawing all reasonable inferences in their favor, no breach of fiduciary duty on the Honda Defendants' part has been described. The Plan offered twenty four investment options; nine of those were Merrill Lynch or Merrill Lynch related mutual funds. This restriction resulted in 52% of the Plan's assets to be held in Merrill Lynch or Merrill Lynch related mutual funds. There is nothing in ERISA that prohibits this type of investment offering nor that requires plan fiduciaries to include any particular mix of investment vehicles in their plan. *See id.*; *see also Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 32-33 (2d Cir. 2009) (affirming grant of motion to dismiss in case where plaintiffs alleged an ERISA fiduciary breach based on allegations that the defendants "knew or should have known that fees and expenses for Fidelity Funds were excessive as compared to alternative investments [since] . . . similar investment products were available with substantially lower fees and expenses").

### b. retail mutual funds

In the case *sub judice*, Plaintiffs allege that the Honda Defendants breached their fiduciary duties by selecting investment options that included retail share mutual funds, the same shares that are available to investors in the retail market, instead of using the Plan's size and

market leverage to negotiate lower than retail share charges for Plan members.  Similarly, in *Hecker*, the plaintiffs alleged that:

> The Fidelity Funds available in the plan are the same funds, and charge the same asset-based fees, as those made available to large and small investors in the retail market for investment funds.  Defendant Deere could have negotiated lower fees with Fidelity Research, or could have selected different funds from different providers with lower rates but has made no effort to do so.

*Hecker v. Deere & Co.*, 496 F. Supp.2d 967, 971 (W.D. Wis. 2007).  In affirming the district court, the Seventh Circuit held that Deere's actions in selecting retail mutual funds did not breach its fiduciary duties, explaining:

> Importantly, all of these funds were also offered to investors in the general public, and so the expense ratios necessarily were set against the backdrop of market competition.  The fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems).

*Hecker*, 556 F.3d at 586.  *See also Braden v. Wal-Mart Stores, Inc.*, 590 F. Supp.2d 1159 (W.D. Mo. 2008) (dismissing for failure to state a claim an ERISA "excessive fee" claim involving the 401(k) plan of one of the country's largest employers where **all** of the challenged funds were retail class shares).

Likewise, in the instant action, the retail funds were offered to investors in the general public, setting the expense ratios against the backdrop of market competition.  This Court, like the Seventh Circuit in *Hecker*, concludes that nothing in ERISA requires the Honda Defendants as to search the market to find and offer the cheapest possible fund.

In Plaintiffs' opposition memorandum Plaintiffs make no attempt to oppose the Honda Defendants' "retail fund" arguments made in reliance upon *Hecker* nor do Plaintiffs attempt to distinguish *Hecker* on the retail funds issue.  Instead, Plaintiffs argue that "Honda relies on a

single case from the Western District of Missouri that, according to Honda, stands for the proposition that 'Plaintiffs' allegation that the Plan included retail mutual funds shares also does not state a plausible claim.' " (Doc. # 71 at 13 citing *Braden*, 590 F. Supp. 2d 1159).  Plaintiffs then assert:

> Nevertheless, the *Braden* case can easily be distinguished from the present case on its facts.  In *Braden*, only two of the ten "retail" share class mutual funds offered in the plan were funds that were affiliated with the plan's investment manager.  The other eight "retail" share class mutual funds that the investment manger offered in the plan belonged to the investment manger's competitors.  In the present case, by contrast, virtually all of the "retail" share class mutual funds offered in the Honda 401(k) Plan were Merrill Lynch affiliated mutual funds, whereas several of the non-Merrill Lynch affiliated mutual funds carried "institutional" share class fees.  Thus, it is reasonable to infer that Merrill Lynch deliberately included "retail" share class funds of its affiliated mutual fund companies in the Honda 401(k) Plan for its own financial benefit.  As the key fiduciary for the Plan, it was Honda's fiduciary responsibility to make sure this type of self-dealing did not happen.  By allowing Merrill Lynch to charge these excessive fees, Honda is liable as well.

(Doc. # 71 at 13-14.)  Plaintiffs' argument is unpersuasive.

Plaintiffs' argument relies on statements that are factually inaccurate in two respects.  First, Plaintiffs contention that the amended complaint alleges that Honda allowed Merrill Lynch to offer retail shares of Merrill Lynch affiliated mutual funds is incorrect–the amended complaint does not contain such an allegation.  This Court cannot consider allegations that have not been made in the amended complaint.  Second, even if this allegation had been pleaded in the amended complaint, it is shown inaccurate by the Plan documents, which indicate that the Merrill Lynch affiliated funds were not retail funds.  Consequently, Plaintiffs attempt to distinguish *Braden* fails.[2]

---

[2] The Court notes that it makes no finding here that Plaintiffs' argument, if based upon accurate factual statements, would be effective to distinguish *Braden*.

Accordingly, Plaintiffs have failed to state a plausible claim for relief based upon the allegations that the Plan included retail share mutual funds.

### 2. Count II - Engaging in Prohibited Transactions in Violation of ERISA § 406(b)

In Count II Plaintiffs allege that the Honda Defendants engaged in a prohibited transaction in violation of ERISA 406(b), 29 U.S.C. § 1106(b) "by engaging in undisclosed self-dealing and by offering and charging multiple layers of excessive fees," and "by offerings high cost, proprietary funds in the Plan." Am. Compl. ¶¶ 74, 75. The Honda Defendants argue that these allegations do not state a plausible claim for relief under ERISA Section 406(b). This Court agrees.

Section 406(b) of ERISA provides:

b) Transactions Between Plan and Fiduciaries. A fiduciary with respect to a plan shall not –

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).

As the Honda Defendants correctly explain, to establish a violation of ERISA Section 406(b), Plaintiffs must prove that these defendants engaged in a "transaction" prohibited by that section while acting in a fiduciary capacity. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 724 (6th Cir. 2000) ("Plaintiffs failed to identify a transaction falling within § 1106 in which either Caliber or REX engaged." (citing to *Spink*, 517 U.S. at 893 ("the Court described the types of

9

transactions set forth in § 1106(a) as 'commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length.' "))). The amended complaint's allegations do not implicate ERISA Sections 406(b)(2) and 406(b)(3) at all with respect to the Honda Defendants. There is no allegation that the Honda Defendants violated Section 406(b)(2) by acting on behalf of a party adverse to the Plan in a transaction involving the Plan. Nor is there any allegation that the Honda Defendants violated Section 406(b)(3) by receiving consideration for their own account from a party dealing with the HAM Plan. Instead, the amended complaint apparently seeks to establish that the Honda Defendants engaged in a "self-dealing" transaction prohibited by Section 406(b)(1). However, a conclusory allegation of "undisclosed self-dealing" is insufficient to plausibly suggest any violation of Section 406(b)(1).[3]

In their opposition memorandum, Plaintiffs argue that the Honda Defendants misconstrue their nondisclosure claim, explaining that the claim includes the allegations in the amended complaint that state that the Honda Defendants included retail funds in the Plan and that the inclusion of Merrill Lynch related funds were not properly disclosed. Plaintiffs then go on to distinguish *Hecker*, arguing that the Honda Defendants misinterpret its holding. (Doc. # 71 at 14-18.) Plaintiffs' arguments indicate that Plaintiffs have a fundamental misunderstanding of the nature of a self dealing prohibited transaction.

First, a prohibited transaction claim is separate and distinct from a fiduciary duty claim. The Department of Labor's long-standing position is that the "self-dealing" prohibitions of

---

[3]Moreover, as the Honda Defendants correctly note, this deficiency cannot be cured, given that the Honda Defendants are not compensated for their services to the Plan, and that they have no interest in Merrill Lynch that could affect their judgment.

ERISA Section 406(b) are not violated unless a fiduciary uses its fiduciary authority "to cause a plan to pay additional fees for a service furnished by such fiduciary or to pay a fee for a service furnished by a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment."  29 C.F.R. § 2550.408b-2(e)(2).  Alleged nondisclosures do not involve "self-dealing" of any sort.  Indeed, there can be no plausible claim against the Honda Defendants under Section 406(b) because these defendants were not compensated for services to the Plan and did not otherwise benefit financially from any fees paid to Merrill Lynch.

Second, the *Hecker* case was not a prohibited transaction case brought under Section 406(b), but rather was one for breach of fiduciary duties brought under Section 502(a).  To the extent that Plaintiffs have attempted to bring a breach of fiduciary duty claim based upon their allegations of nondisclosure, that claim too cannot survive the Honda Defendants' Motion to Dismiss.  In that regard, Plaintiffs allege that the Honda Defendants breached a general fiduciary obligation to inform participants of "expenses that are and continue to be paid by the Plan as well as the transactions, fees, and expenses which affect participants' individual account balances."  Am. Compl. ¶ 68(e).  In their memorandum in opposition, Plaintiffs argue that "Defendants are wrong when they argue that the fundamental duty of a fiduciary is to disclose only that information specifically enumerated in certain statutory sections of ERISA . . . [and that] [a] number of courts have expressly rejected this argument and held that a fiduciary's duties extend beyond the specific statutory sections of ERISA."  (Doc. # 71 at 19.)  Plaintiffs argument, however, is not well taken.

While Plaintiffs are correct that the Ninth Circuit has indeed opined that "in order to give meaning and effect to ERISA's fiduciary purpose, more must be required of an administrator

11

than mere compliance with ERISA's express reporting and disclosure provisions," that opinion has no binding authority over this Court and is in direct contradiction to the law of this circuit. *See Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1071-72 (9th Cir. 2005). That is, as the Honda Defendants correctly argued in their motion, the Sixth Circuit requires a plaintiff to allege that a fiduciary violated one of the detailed and specific disclosure requirements found in ERISA. *See* 29 U.S.C. §§ 1021-1031; 29 C.F.R §§ 2520.101-1, *et seq.* In *Sprague v. GMC*, 133 F.3d 388 (6th Cir. 1998), the court opined that "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Sprague*, 133 F.3d at 405 & n.15 ("when Congress and the Department of Labor have carefully prescribed a detailed list of matters that must be disclosed to plan participants and beneficiaries, it ill-behooves federal judges to add to that list"); *Shirk v. Fifth Third Bancorp*, No. 05-cv-049, 46 Employee Benefits Cas. (BNA) 2502 , 2009 U.S. Dist. LEXIS 24490, at *54 (S.D. Ohio Jan. 29, 2009) ("despite Plaintiffs' argument to the contrary . . . , the Sixth Circuit has never held that ERISA imposes a general duty of disclosure on fiduciaries. In fact, courts cite *Sprague* for the proposition that there is no general duty of disclosure beyond what is specifically required under ERISA."). Plaintiffs made no attempt to distinguish *Sprague* and its progeny in their memorandum in opposition.

The Court concludes that based on *Sprague*, this Court is prohibited from relying on other ERISA provisions to create implied disclosure obligations. Accordingly, the Court finds that even when accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, Plaintiffs have failed to allege a plausible claim that the Honda

Defendants engaged in an ERISA-prohibited transaction or a plausible nondisclosure claim under the ERISA-imposed fiduciary duties.

**B. Motion to Strike**

Based on the Court's conclusion that Plaintiffs' amended complaint cannot survive Defendants' Motion to Dismiss, Defendants' Motion to Strike has been rendered moot. Consequently, the Court **DENIES AS MOOT** Defendants' Motion to Strike.

**C. Requests for Oral Argument**

Both Plaintiffs and the Honda Defendants request that this Court permit oral argument on the Honda Defendants' Motion to Dismiss. The Court, however, does not deem oral argument "to be essential to the fair resolution of the case" and therefore **DENIES** the parties' request. *See* S.D. Ohio Civ. R. 7.1(b)(2).

### IV.  Conclusion

Based on the foregoing, the Court **GRANTS** the Honda Defendants' Motion to Dismiss (Doc. # 60), **DENIES AS MOOT** the Honda Defendants' Motion to Strike (Doc. # 60), and **DENIES** the parties' request for oral argument.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE